**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**FRANKIE LEE DANIELS,**

    **Plaintiff,**

vs.                                                     **CASE NO. 4:04CV236-MP/AK**

**MACK NORTON, et al,,**

    **Defendants.**

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this cause of action pursuant to 42 U.S.C. §1983 alleging.....Defendants have filed a special report (doc. 42), which the Court has construed as a motion for summary judgment (doc. 55), and set forth deadlines for submission of a response and discovery motions. (Doc. 51). Plaintiff filed a motion for summary judgment (doc. 50), which was construed as a response to the motion filed by Defendants, and although Plaintiff has sought and received discovery (docs. 57, 58, 60, 63, 64, 65, 67, 68), after the filing of his response (doc. 50), no additional response has been filed nor any extension of time sought for filing one. The matter is now ripe for review.

**I.**     **Second Amended Complaint (doc. 23)**

Plaintiff describes being asleep at a friends apartment on the night of December 15, 2003, when he was struck in the head with a heavy object "repeatedly" and a large

person was on top of him with his knee "jammed" into Plaintiff's back. (Doc. 23, p. 7). Plaintiff also claims that two guns were thrust in his face. After he was handcuffed, Plaintiff claims that Defendant Norton slammed his face into the wall and Defendant Hightower hit him in the temple with his fist knocking him to the ground, where Defendant Hightower continued to kick him in the lower back and face. Plaintiff claims that the Defendants used racial slurs at him while he lay on the floor bleeding and threatened to kill him if he did not confess to a number of burglaries. Plaintiff claimed that the beating continued resulting in abrasions and lacerations on the face, head, and stomach. Plaintiff claims that when another officer arrived, Corporal Terry Blackmon, he was told by Defendants Norton and Hightower that Plaintiff had resisted arrest. Plaintiff was then taken to the Jefferson County Jail and treated for his injuries by Nurse Betsy Malloy. Plaintiff claims that he continues to suffer from these injuries and is being treated at the Okaloosa Correctional Institution for them.

Plaintiff asserts a Fourth Amendment claim for unreasonable search (no warrant) and an excessive force claim under the Eighth Amendment.[1] Plaintiff also claims a due process violation in that he was not advised of his rights prior to his interrogation. He seeks compensatory damages of $50,000 from each Defendant; punitive damages of $25,000 from each Defendant, and $25,000 for emotional distress from each Defendant.

---

[1] Since the alleged excessive force was asserted in the context of an arrest, it is actually a Fourth Amendment claim. (See Section IV below).

**No. 4:04CV236-MP/AK**

**II.   Standard of Review**

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).  All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts.  Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002).   The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  Celotex, 477 U.S. at 322-23.  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof.  Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).  "For factual issues to be considered genuine, they must have a real basis in the record."  Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v.

**No. 4:04CV236-MP/AK**

Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, Celotex, supra at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment. Gauck v. Meleski, 346 F.2d 433, 436 (5th Cir. 1965).

**III.     Defendants relevant Rule 56(e) evidence**

    a)     Affidavit of Mack Norton

Defendant Norton is presently a Sergeant with the Monticello Police Department and has been with that department for 13 years. (Doc. 42-2). On December 15, 2003, he went to the residence of Stanley Clark to investigate a number of burglaries, and when Mr. Clark answered the door he asked him if he would come to the station to discuss this. Mr. Clark told him that he was selling stolen property, but had not stolen it himself, rather Plaintiff had provided him with the goods. Mr. Clark advised that Plaintiff was back at his apartment sleeping under a pink blanket on the floor. A pink blanket was one of the items stolen in a recent burglary. There were also several outstanding warrants for Plaintiff from the state of Georgia. Mr. Clark gave the officers a key to his apartment and they returned to find Plaintiff lying under a pink blanket. Because the

**No. 4:04CV236-MP/AK**

officers did not know if Plaintiff was armed they entered the apartment with their weapons drawn for their own safety. When they ascertained that Plaintiff was not armed, they holstered their weapons, handcuffed him without incident and placed him in the back of a patrol car. Plaintiff had a wound on his wrist that was covered in gauze, which he said he had gotten when he fell on a pipe. No force was necessary and none was used against Plaintiff.

  b)  <u>Affidavit of Tim Hightower</u>

Defendant Hightower was a corporal with the Monticello Police Department on the night in question and recalls being called to an apartment where Plaintiff, who was being investigated in a series of burglaries, was allegedly staying. He met with Defendant Norton and they entered the apartment with their weapons drawn for officer safety. They located Plaintiff under a pink blanket on the floor and as soon as they ascertained that he had no weapon they holstered theirs and handcuffed him without incident and placed him in the back of the car. Hightower remained at the scene and had no further contact with Plaintiff.

  c)  <u>Affidavit of William Reams</u>

Mr. Reams is Supervisor of the Jefferson County Jail and is responsible for maintaining inmate records. The following records have been produced pertaining to Plaintiff (doc. 68):

  1. <u>Report of Medical History (doc. 68-2)</u>

Upon examination on December 15, 2003, Plaintiff reported a number of chronic health conditions, but no injuries. He signed the form underneath the question, "Are you

injured at this time?" to which the response marked was "No." The observations of the intake officer indicated nothing abnormal.

During an examination of January 9, 2004, Plaintiff advised that he had been told he might have a brain infection and was supposed to get an x-ray and MRI of his head, but he did not follow through because of transportation. He complained of chronic headaches and chest pain, and reported a history of AIDS, which he had never treated, and hypertension for which he took medication 3 months ago. It was noted that he had severe decay in one tooth that needed repair.

    2. <u>Outpatient Clinic Record (doc. 68-2)</u>

Entry of December 15, 2003, states that he needs a medical screening by 12-28-03, he is HIV positive, and has a large open wound on his left wrist which he said he got on December 7, 2003, when he fell on a pipe in the ground. The wound was cleaned and dressed that night and he was to be kept out of general population. It was noted that he said he was supposed to get a spine x-ray and CT scan of his head "last month," but he did not go because he did not have a ride. There were no other notations about any other injuries.

Later treatment notes show that the wound on his wrist was treated regularly and he complained only that his mouth was sore and he was having problems with anxiety and headaches, which were treated with medication. In an entry dated January 12, 2004, it was determined that he should have a CT scan of his head "ASAP." An appointment was made for February 5, 2004. Plaintiff continued to be treated for

dizziness, headaches, and the wound on his wrist. He was encouraged to start treatment for AIDS, and finally agreed on March 5, 2004 to begin medications.

   3.  Medication logs

Plaintiff refused medication numerous times.

   4.  MRI results

"No evidence of any acute intracranial process."

   5.  GI consultation report by Dr. Michael Mangan dated 7/1/04

Plaintiff was given a full examination because of complaints of abdominal pain, which he said began on June 7. It was suspected that some disease process or infection and a number of tests were ordered. There were no complaints made to this physician about any other injuries or problems.

**IV.   Plaintiff's Sworn Statement**

Plaintiff reaffirms the allegations made in his complaint that he was beaten and tortured to extract a confession, but he did not confess nor did he ever resist arrest or attempt to flee. He also witnessed the officers tearing up his friends apartment, and they never presented a search warrant to Plaintiff.

**V.   Analysis**

   a)   Excessive Force

A claim of excessive force in the course of an arrest, investigatory stop, or any other "seizure" of a free citizen is analyzed under the Fourth Amendment and its "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 1871 and n. 10, 104 L.Ed.2d 443 (1989); Hamm v. Powell, 874 F.2d 766 (11th Cir. 1989), as

**No. 4:04CV236-MP/AK**

modified on rehearing, 893 F.2d 293 (1989). The issue of "reasonableness" requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate theat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 109 S.Ct. at 1872.

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force, the same standard of reasonableness applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," Johnson v. Glick, 481 F.2d [1028], at 1033 [(2d Cir.), *cert. denied*, 414 U.S. 1033 (1973)], violates the Fourth Amendment  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation.

While it is not the Court's role to weigh conflicting evidence or make credibility determinations, Mize v. Jefferson City Bd. of Education, 93 F.3d 739 (11th Cir. 1996), as set forth above in Section II, Plaintiff must come forward with some evidence that a jury could reasonably return a verdict for the party bearing the burden of proof, and the existence of some "metaphysical doubt" or a "scintilla" of evidence is insufficient.

Plaintiff describes a vicious attack on him with blows about the head by a blunt object, kicking in his face and back area, repeated blows with fists, which left him bleeding and in severe pain. He offers no explanation for why the intake examination shows no injuries to his body, except for the wrist wound the officers observed upon his arrest, which he admittedly got several days earlier. He offers no explanation why he complained of a number of health problems and was seen by medical staff at the jail

**No. 4:04CV236-MP/AK**

numerous times over the weeks he was in the jail, yet never complained about the beating. The treatment notes indicate that the staff was attendant to his health issues, obtaining a MRI to ascertain the nature of his headaches and dizziness, encouraging him to treat his AIDS and high blood pressure, which he had neglected to treat on his own, and arranging for a comprehensive examination by an independent physician to ascertain the nature of his GI complaints. It is not likely, and indeed Plaintiff does not even suggest, that the medical staff, so attentive to his health issues, would have ignored and not treated or documented the vicious beating and severe injuries Plaintiff describes. Further, even if the medical staff at the jail had ignored his condition for some self-serving motive, Plaintiff had the opportunity at the examination by the independent physician to describe his injuries to that person and perhaps seek treatment for what he contends are ongoing health issues arising from this beating. The only evidence supporting Plaintiff's version of what happened is his declaration describing the torture and beating, but as noted above there is nothing in the declaration to explain why none of his injuries were noted by anyone or treated by a medical staff so willing to treat his other conditions. Consequently, the undersigned finds that this "evidence" is insufficient to create a genuine issue of material fact, and this claim should be dismissed.

      b)    <u>Illegal Search</u>

While legal ownership is not a prerequisite for standing to assert Fourth Amendment violations, there is considerable question as to whether Plaintiff can assert this claim as to the search of Stanley Clark's apartment. <u>See</u> <u>United States v. Garcia,</u>

**No. 4:04CV236-MP/AK**

741 F.2d 363 (11th Cir. 1984). Mere presence in the apartment would not be enough, an occupant other than the owner or lessee of an apartment must demonstrate a significant and current interest in the searched premises in order to establish an expectation of privacy. See Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); United States v. Sneed, 732 F.2d 886 (11th Cir.1984) (no expectation of privacy demonstrated when defendant only alleged that he was present on searched premises as a guest); United States v. Rackley, 724 F.2d 1463 (11th Cir.1984) (person lacked standing to contest search of garage even though he had stayed overnight in guest bedroom at an earlier date).

By his own admission, the apartment was Stanley Clark's, and Plaintiff was sleeping on the floor. There is no contention by Plaintiff that he lived there, had ever stayed there before, had property there, or even had a personal space of his own at this apartment. Further, Plaintiff has offered no proof to counter the facts set forth in the affidavits of Defendants that Clark gave them permission to enter and search the apartment and a key to the apartment.

Finally, Plaintiff has not identified what property of his was seized in the search, how it was used against him, or any other pertinent facts to support his claim that this constitutional violation damaged him. Thus, there is no merit to this claim, either, and it should be dismissed.

    c)    Due Process

Plaintiff claims that he was denied due process because the Defendants did not advise him of his rights prior to his arrest. Damages incident to an arrest for a sentence

**No. 4:04CV236-MP/AK**

or conviction that has not yet been reversed or invalidated is not cognizable under 42 U.S.C. § 1983.  Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 2372, 129 L. Ed. 2d 383 (1994).  Plaintiff is presently confined on the charges for which he was arrested and at this time this conviction and sentence has not been invalidated.  Thus, this claim should also be dismissed.

The undersigned is recommending in addition to the complaint being dismissed that the Clerk note that this dismissal constitutes a "strike" within the meaning of 28 U.S.C. §1915(g) not only because Plaintiff has failed to state a claim, but also because his claims appear to have been wholly fabricated, malicious, and without any factual basis.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion (doc. 55) be **GRANTED**, and this cause be **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), and that the order adopting this report and recommendation direct the clerk of court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(I) and (ii).

**IN CHAMBERS** at Gainesville, Florida, this  **24**th day of August, 2007.


*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**


**No. 4:04CV236-MP/AK**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 4:04CV236-MP/AK**